IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-HC-02131-M-RJ

DARRYL DAMON LEACH,                 )
                                    )
            Petitioner,             )
                                    )
                                    )            ORDER
     v.                             )
                                    )
UNITED STATES OF AMERICA,           )
                                    )
            Respondent.             )

On June 9, 2025, Darryl Damon Leach ("petitioner"), a federal inmate at F.C.I. Butner, filed *pro se* a petition for a writ of habeas corpus under 28 U.S.C. § 2241. See [D.E. 1]. Pursuant to an order of deficiency, Order [D.E. 3], petitioner refiled his petition on the correct forms, Pet. [D.E. 4] (seeking application of First Step Act ("FSA") time credits toward early release), and moved to proceed without prepayment of fees, Mot. [D.E. 5]. On November 14, 2025, the court allowed the action to proceed and granted the motion to proceed without prepayment of fees. Order [D.E. 8]. On December 15, 2025, respondent filed a motion for summary judgment, Mot. [D.E. 13], a memorandum [D.E. 14], a statement of facts [D.E. 15], and an appendix [D.E. 16]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified petitioner about the motion for summary judgment, the response deadline, and the consequences of failing to respond. [D.E. 17]. Despite seeking and receiving multiple extensions of time, see [D.E. 18, 19, 20, 21], petitioner failed to respond and the time to do so has passed.

Statement of Facts:

A party's statement of undisputed material facts is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a correspondingly

numbered paragraph in the opposing statement." Local Civ. R. 56.1(a)(2); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir 2017) (per curiam) (unpublished); see Fed. R. Civ. P. 56(e)(2).

Respondent's statement of material facts cites the underlying evidence which the court has reviewed, whereas petitioner has not filed any opposing statement of facts.

Petitioner is serving a 94-month federal sentence for unlawful possession of a firearm by a felon and is scheduled to release from his federal sentence on March 3, 2027, via good conduct time release. See Resp't Stmt. Mat. Facts. [D.E. 15] at ¶¶1–3. As of November 25, 2025, petitioner had earned 365 days of First Step Act ("FSA") time credits toward early release. Id. at ¶4.

The Federal Bureau of Prisons ("BOP") assessed petitioner's risk level using the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") system multiple times and, since December of 2021, he has been assessed as a Medium Recidivism Risk Level. Id. at ¶5. At his most recent PATTERN assessment on October 7, 2025, the BOP again assigned him a Medium Risk Recidivism Level with a "General Score" of 31, and a "Violent Score" of 27. Id. at ¶6.

"An inmate's PATTERN score takes into consideration numerous individual factors, including his/her criminal history, history of escapes, history of violence, incident report history, and programs completed while in BOP custody." Id. at ¶7.

With a Medium Risk Recidivism Level, petitioner "can accrue FSA time credits but cannot apply them to his sentence until he reaches a Low or Minimum Recidivism Risk Level." Id. at ¶8.

"Inmates who do not have a Minimum or Low Recidivism Risk Level may also petition the Warden for individual approval of the application of earned FSA time credits." Id. at ¶9.

2

"On April 15, 2025, Petitioner submitted a request to his Unit Team, in which he requested the application of his earned FSA time credits." Id. at ¶10. "On April 16, 2025, the Warden at FCI Butner II denied Petitioner's request for the application of his FSA time credits." Id.

"During his incarceration with the BOP, Petitioner has filed only one administrative remedy request through the BOP's Administrative Remedy Program concerning credits earned under the First Step Act." Id. at ¶11.

"Petitioner's sole administrative remedy request concerning FSA credits was filed with the BOP's Mid-Atlantic Regional Office and was rejected and returned to him on May 28, 2025." Id. at ¶12. "Following the rejection, Petitioner has not submitted any additional administrative remedy requests concerning FSA credits." Id.

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this

3

determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Discussion:

Section 2241 empowers the court to grant habeas relief to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c).

Respondent argues both that petitioner failed to exhaust administrative remedies before filing this action and that petitioner is not entitled to the relief sought. See Resp't Mem. [D.E. 14].

> Prior to hearing a § 2241 petition, federal courts require exhaustion of alternative remedies, including administrative appeals. See e.g., Boumediene v. Bush, 553 U.S. 723, 793 (2008); Timms v. Johns, 627 F.3d 525, 531 (4th Cir. 2010). The exhaustion requirement is a prudential restraint, not a statutory requirement. Dragenice v. Ridge, 389 F.3d 92, 98 (4th Cir. 2004). It allows agencies to exercise autonomy and discretion and prevents premature judicial intervention. Darby v. Kemp, 957 F.2d 145, 147 (4th Cir. 1992), rev'd on other grounds sub nom. Darby v. Cisneros, 509 U.S. 137 (1993).

Rodriguez v. Ratledge, 715 F. App'x 261, 265 (4th Cir. 2017) (per curiam) (unpublished).

Successfully exhausting administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (internal citations and quotation marks omitted). "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Id. at 93. Failure to exhaust administrative remedies is an affirmative defense that generally must be pleaded and proved. See Jones v. Bock, 549 U.S. 199, 216 (2007); Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017).

The BOP has a multi-tiered Administrative Remedy Program. See 28 C.F.R. §§ 542.10, et seq. An inmate first seeks informal resolution by filing Form BP-8, and, if unresolved, the inmate

4

must file a formal written "Administrative Remedy Request," Form BP-9. Id. at §§ 542.13, 542.14(a). The Warden generally must respond within 20 days. Id. at § 542.18. Within twenty days of the Warden's BP-9 response, an inmate may appeal to the Regional Director by filing Form BP-10. Id. at § 542.15. Finally, within 30 days of the Regional Director's BP-10 response, the inmate may appeal to the General Counsel by filing Form BP-11. Id. If the inmate fails receive a response within these allotted time frames, including extensions of time, the inmate may treat the absence of a response as a denial and then may appeal to the next level. Id. at § 542.18.

Here, Dorthea Orr declares, *inter alia*, that: Orr is a BOP Paralegal Specialist at Butner; Orr has access to official BOP records to include petitioner's attached records; the attached records are "business records of regularly conducted activity" that Orr is "qualified to authenticate"; Orr certifies that the attached records "(1) were made at or near the time of the occurrence or the matters set forth by, or from information transmitted by, a person with knowledge of those matters," "(2) were kept in the course of regularly conducted activity," and "(3) were made by the regularly conducted activity as a regular practice"; petitioner currently is serving a 94-month federal sentence for unlawful possession of a firearm by a convicted felon and is scheduled to release from his federal sentence on March 3, 2027, via good conduct time release; as of November 25, 2025, petitioner has earned 365 days of FSA time credits toward early release; the BOP has assessed petitioner's risk level using the PATTERN system multiple times and each time since December of 2021, petitioner has been assessed as a Medium Recidivism Risk Level; on October 7, 2025, petitioner was assigned a Medium Risk Recidivism Level due to a PATTERN "General Score" of 31, and a "Violent Score" of 27; as a Medium Risk Recidivism Level inmate, petitioner "can accrue FSA time credits but cannot apply them to his sentence until he reaches a Low or

5

Minimum Recidivism Risk Level"; "Inmates who do not have a Minimum or Low Recidivism Risk Level may also petition the Warden for individual approval of the application of earned FSA time credits"; "On April 15, 2025, [petitioner] submitted a request to his Unit Team, in which he requested the application of his earned FSA time credits" but, on "April 16, 2025, the Warden at FCI Butner II denied petitioner's request for the application of his FSA time credits"; the BOP has established an administrative remedy program ("ARP") that coincides with the regulations set out at 28 C.F.R. § 542; an attached SENTRY Administrative Remedy Generalized Retrieval Report lists all three administrative grievances filed by petitioner in the BOP as of December 15, 2025; in the "remedy ID" section of this report, "the letter 'R' indicates that the submission was received by a BOP Regional Director," and "the subsequent number indicates the number of times an inmate has submitted that same request at the same level of the BOP administrative remedy program"; the column labeled "RCV OFC" lists "submissions received by the BOP Mid-Atlantic Regional Office are abbreviated as 'MXR'"; the "status code" column "lists the status or disposition of the administrative remedy submission" and "the abbreviation 'REJ' indicates that the submission was rejected"; the "status reason" column "lists the reason for the status of the administrative remedy submission," "the abbreviation 'WRL' indicates the administrative remedy request as submitted to the wrong level or wrong office" and "the abbreviation 'INS' instructs the inmate must first file a BP-9 request through the institution for the Warden's review and response before filing an appeal at this level"; only one of petitioner's three grievances, Administrative Remedy 1242047-Rl, involved FSA credits; petitioner submitted this request to the BOP's Mid-Atlantic Regional Office on May 27, 2025, and this "administrative remedy appeal was rejected on May 28, 2025, due to being submitted to the wrong level"; petitioner "was instructed that he needed to file the remedy

6

request with the Warden at the institution level first, before appealing to the Regional Office";
following the Regional Office rejection, however, petitioner "has not submitted any additional
administrative remedy requests concerning FSA credits or his ability to have the credits applied to
his sentence." See Resp't App., Orr Decl. [D.E. 16-1] at ¶¶1–18.

The record supports respondent's statement of facts and Orr's declaration. See Resp't App.
[D.E. 16-2] at 1–3 (petitioner's inmate data reflecting a projected release date of Mar. 3, 2027, via
Good Conduct Time release and that he is ineligible for FSA credits); id., [D.E. 16-3] at 1–3
(petitioner's FSA time credit assessment showing petitioner has accrued 365 days of time credits
toward release, but is ineligible to apply these credits due to his Medium Recidivism Risk Level);
id., [D.E. 16-4] at 1–2 (petitioner's PATTERN worksheet summary showing a general score of 31
and a violent score of 27); id., [D.E. 16-5] at 1–2 (petitioner's Apr. 15, 2025, request to apply FSA
time credits, with the Apr. 16, 2025, disapproval decision); id., [D.E. 16-6] at 1–3 (petitioner's
Administrative Remedy Generalized Retrieval showing, *inter alia*, the BOP's Regional Office
rejected his request seeking FSA credits on May 28, 2025, with rejection codes WRL and INS).

In short, respondent has shown that petitioner failed to fully exhaust his administrative
remedies before filing this action, see Jones, 549 U.S. at 216–17; Woodford, 548 U.S. at 90,
whereas petitioner fails to show that the BOP administrative remedy procedure was "unavailable"
to him within the meaning of Ross v. Blake, 578 U.S. 632, 642 (2016); see Moore v. Bennette,
517 F.3d 717, 725 (4th Cir. 2008), or establish the existence of "exceptional circumstances" that
would allow him to bypass the administrative remedy procedure, cf. Timms, 627 F.3d at 530–31.

Alternatively, because habeas exhaustion merely is a prudential restraint, see Dragenice,
389 F.3d at 98, and since the merits of the petition are straightforward, the court also addresses the

7

petition on the merits, see Yakubu v. Joseph, No. 8:24-CV-2633-MGL-WSB, 2024 WL 4884576, at *3 (D.S.C. Nov. 5, 2024), report and recommendation adopted, No. CV 8:24-2633-MGL, 2024 WL 4881999 (D.S.C. Nov. 25, 2024).

Eligible inmates may earn FSA "time credits," reducing the custodial portion of a sentence, by participating in BOP approved programming. 18 U.S.C. §§ 3621(h)(2), 3632(d)(4)(A), (D).

> The FSA provides eligible inmates the opportunity to earn 10 to 15 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming (EBRR programs) and productive activities (PA). 18 U.S.C. § 3632(d)(4)(A). The earned credits, referred to as FTCs, can be applied toward earlier placement in prerelease custody, such as Residential Reentry Centers and home confinement, or toward a term of supervised release. Id. § 3632(d)(4)(C).
>
> Title I of the FSA mandated the development and implementation of a risk and needs assessment system for people in federal custody. The result was the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) — a program designed to assess individuals' risk of engaging in crime once they are released from federal custody. An inmate's ability to benefit from FTCs is dependent on his PATTERN score. Inmates with any PATTERN score may earn FTCs, but only those inmates with low and minimum PATTERN scores can have the FTCs applied to their sentences. 28 C.F.R. § 523.42 (explaining how inmates earn FTCs); id. § 523.44 (limiting application of FTCs to eligible inmates who also have "demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment").

Francis v. Warden of USP Lee, No. 7:22CV00307, 2023 WL 3945511, at *1 (W.D. Va. June 12, 2023).

Here, although petitioner may earn FSA time credits, the BOP presently cannot apply these time credits to his sentence due to his medium risk of recidivism PATTERN score. See Resp't App. [D.E. 16-4]; see also Fleming v. Napier, No. 8:24-CV-3972-SAL-WSB, 2024 WL 4756291, at *3 (D.S.C. Sept. 24, 2024) ("under 18 U.S.C. § 3624(g)(1)(D)(i)-(ii), the BOP cannot apply those time credits to [his] sentence unless and until [he] has a minimum or low risk recidivism

8

level for two consecutive assessments for prerelease custody or a minimum or low risk recidivism level for the last assessment for supervised release." (citation omitted)), report and recommendation adopted, No. 8:24-CV-3972-SAL, 2024 WL 4753627 (D.S.C. Nov. 12, 2024).

Viewing the record and the reasonable inferences drawn therefrom in the light most favorable to petitioner, Scott, 550 U.S. at 378, respondent has demonstrated that petitioner failed to exhaust his administrative remedies before filing this action or, alternatively, is not entitled to the requested habeas relief, Celotex, 477 U.S. at 325, whereas petitioner fails to come forward with specific facts showing that there is a genuine issue for trial, cf. Matsushita, 475 U.S. at 587. Thus, respondent is entitled to summary judgment. See Anderson, 477 U.S. at 247–49.

Finally, because reasonable jurists would not find the court's treatment of any of these claims debatable or wrong, and because none of the issues are adequate to deserve encouragement to proceed further, the court also denies a Certificate of Appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Conclusion:

Accordingly, the court: GRANTS respondent's motion for summary judgment [D.E. 13]; DISMISSES WITHOUT PREJUDICE this § 2241 petition as unexhausted or, alternatively, because petitioner is not entitled to the requested relief; DENIES a Certificate of Appealability; and DIRECTS the clerk to close the case.

SO ORDERED this __9th__ day of March, 2026.

RICHARD E. MYERS II
Chief United States District Judge

9